953 F.2d 639
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SOUTH CAROLINA STATE PORTS AUTHORITY, Plaintiff-Appellant,
v.
SILVER ANCHOR, S.A., (PANAMA); Oristis Christophides, a/k/a
Rusty Christophides, In Personam, Defendants-Appellees,
and
M/V LEVANT FORTUNE, (ex-VALIANT), her engines, boilers,
tackle, furniture, equipment, freights and
apparel, In Rem equipment, Defendant.
SOUTH CAROLINA STATE PORTS AUTHORITY, Plaintiff-Appellant,
v.
SILVER ANCHOR, S.A., (PANAMA); Oristis Christophides, a/k/a
Rusty Christophides, Defendants-Appellees,
and
M/V LEVANT FORTUNE, (ex-VALIANT), her engines, boilers,
tackle, furniture, equipment, freights and
apparel, In Rem equipment, Defendant.
 Nos. 91-2567, 91-2600.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 3, 1991.
Decided Jan. 31, 1992.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, District Judge. (CA-91-1574)
 Argued: John Hughes Cooper, Cooper & Raley, Charleston, S.C., for appellant; Douglas Manning Muller, Buist, Moore, Smythe & McGee, Charleston, S.C., for appellees.
 On Brief: Benjamin Allston Moore, Jr., Buist, Moore, Smythe & McGee, Charleston, S.C., for appellees.
 D.S.C.
 REVERSED AND REMANDED.
 Before PHILLIPS, MURNAGHAN and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The case involves the validity of a dismissal of a complaint by the United States District Court for the District of South Carolina for want of maritime jurisdiction. Appellant South Carolina State Ports Authority ("Ports Authority") sought to allege an in rem action against a vessel, the "M/V LEVANT FORTUNE" for enforcement of a maritime lien, and in personam actions against defendant corporation Silver Anchor, S.A. ("Silver Anchor"), the vessel's corporate owner, and Oristis Christophides, director and shareholder of Silver Anchor, for the breach of an oral contract.
 
 
 2
 In the contract, Christophides allegedly bound himself, personally, and Silver Anchor, to assume payment of an amount owed the Ports Authority by a third party, Constellation. In return, the Ports Authority allegedly agreed to provide additional maritime services to vessels owned or operated by Christophides or related entities. Because neither Silver Anchor nor Christophides could be found within the district, the district court issued a warrant for the attachment of the M/V LEVANT FORTUNE pursuant to Rule B of the Rules of Admiralty. The boat was attached and placed in the custody of a custodian, and held at Charleston Harbor. Defendants immediately filed a motion to dismiss the complaint, alleging, inter alia, that the Ports Authority's in personam claims were based on a non-maritime contract.
 
 
 3
 Following defendants' motion to dismiss, plaintiff filed an amended complaint which dropped the in rem claim, but asserted an in personam action based on the oral contract between the parties. The district court ruled, following the amended complaint, that the only remaining issue to be determined was whether the facts set forth in the amended complaint were sufficient to confer admiralty jurisdiction on the court. The district court issued an order on June 6, 1991 dismissing the Port Authority's claim for lack of admiralty jurisdiction.
 
 
 4
 The court relied upon Pierside Terminal Operators, Inc. v. M/V Floridian, 423 F.Supp. 962 (E.D.Va.1976), to support its ruling. In Floridian the owner of a ship leased it under a bare boat charter agreement to another party. The person who chartered the ship failed to pay debts due to its port agent. When the agent threatened to libel the ship, the owner stepped in and promised to pay the charterer's debt. The Floridian court dismissed the action for lack of maritime jurisdiction, stating that: "[p]erformance of an actual 'maritime service' is required for jurisdictional 'maritime flavor,' " id. at 968; and that "the coincidence ... of the alleged guarantor also being in fact the owner of the vessel to which services were extended is of no jurisdictional consequence...." Id. at 970.
 
 
 5
 We find that the district court erred by dismissing the present case at such an early stage of the proceedings. Appellant presented sufficient allegations to initiate further discovery to ascertain exactly what maritime services were provided, and exactly how appellees benefitted from them. According to the appellant, the promise made by appellees was obtained for consideration that included maritime services. The contract, they argue, is thus maritime in nature, creating admiralty jurisdiction in the district court.
 
 
 6
 In order to provide admiralty jurisdiction over the dispute in the case, it first must be determined that the contract involved was a maritime contract. North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125 (1919). Our review of the district court's dismissal on grounds of lack of subject matter jurisdiction is de novo, Richmond, Fredricksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-9 (4th Cir.1991), and must assume the allegations of the complaining party to be true. Beaman v. Pacific Mut. Life Ins. Co., 369 F.2d 653, 654 (4th Cir.1966).
 
 
 7
 The district court, as has been mentioned, relied upon the Floridian case to support its determination that there was no admiralty jurisdiction over the case at hand. The facts in Floridian, though apparently similar, are actually significantly different from those in the present case. According to appellant's allegations, the facts are different enough to indicate that further proceedings, beyond the dismissal stage, are called for in the district court to determine whether admiralty jurisdiction exists.
 
 
 8
 In Floridian the owner of the ship agreed to take over the debt of a third party, the charterer of the vessel. The consideration for the agreement to assume the debt is not specifically stated in the opinion, but it is likely that, as the owner of the ship, the contracting party saw that it was in his best interest to prevent default by one of his charterers. The district court correctly ruled in Floridian that the agreement did not involve the performance of "maritime services." 423 F.Supp. at 968.
 
 
 9
 The case at hand, though also involving the assumption of the debt of a third party, is in other respects dissimilar. The Ports Authority has alleged that Christophides agreed to take on the debt of the third party in exchange, inter alia, for "additional maritime services provided" to other vessels he owned. In the contract, unlike the one in Floridian, maritime services are thus centrally involved. Appellees testified to a certain amount of confusion over whether the maritime services were provided in a way that directly benefitted Christophides. The record, given the early stage of dismissal of the case on lack of jurisdiction grounds, is not sufficient to resolve the confusion. Absent additional discovery specifying the beneficiary of the services and specifically setting out the nature of the services provided, the conclusion of the district court that there is no admiralty jurisdiction cannot be justified.
 
 
 10
 Accordingly, we reverse and remand for further development of evidence indicating the extent of the maritime services provided, and the extent to which appellees benefitted from those services. Perhaps, though by no means certainly, the further development might indicate an insufficient maritime character to the agreement to support admiralty jurisdiction, in which case dismissal for lack of jurisdiction would be appropriate.
 
 
 11
 REVERSED AND REMANDED.